UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC.,

    Plaintiff,

Case No. 4:07-cv-12389

v.

Hon. PAUL V. GADOLA

NED NORETTO,

    Defendant.

| | |
|---|---|
| BUTZEL LONG<br>By: James J. Giszczak (P46917)<br>    Katherine D. Goudie (P62806)<br>150 West Jefferson, Suite 100<br>Detroit, MI 48226<br>(313) 983-7475<br>Attorneys for Plaintiff | KIRK M. LIEBENGOOD (P28074)<br>P.O. Box 1405<br>Flint, MI 48501<br>(810) 232-6351<br>Attorney for Defendant |

**PLAINTIFF KELLY SERVICES, INC.'S REPLY BRIEF
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

A.     **Kelly Will Succeed on the Merits of Its Claims.**

      1.     **Noretto Admits Breaching His Enforceable Agreement and Admits That He Has Kelly's Trade Secrets and Confidential Information.**

Noretto admits he is employed by a direct competitor, Volt, in the same market area, all in breach of his non-compete agreement, and that he has Kelly's trade secrets and had extensive customer contact and responsibilities. His admissions include the following:

- Noretto executed the non-compete agreement. (Answer, ¶ 10.)
- He was trained by Kelly, used Kelly's "system for doing business," and has information concerning Kelly's customers. (*Id.*, ¶¶ 14-15, 17.)
- He closed two large accounts, one of which involves millions of dollars, before his employment with Kelly terminated. (Supplemental Response Brief, p. 2; Noretto Affidavit, ¶¶ 7-8.)
- He has taken a position with Volt, "which is engaged in a business similar to" Kelly. (Answer, ¶ 22.)

Although Noretto claims that he is willing to not contact a few of Kelly's major customers, this "offer" to comply with a small part of his Agreement is wholly unacceptable.

This proposal does not provide any protection against Defendant's misappropriation and use of Kelly's trade secrets, nor does it protect the numerous other Kelly customers, nor does it comply with the plain language of his contractual obligations.[1]  Noretto admits that he accessed, used and still has Kelly's trade secrets.  As Regional Manager, Noretto also had extensive contact with customers.  Noretto admits that he assisted in closing large multi-million dollar deals for Kelly.  Consequently, Noretto can use his knowledge of Kelly's regional pricing and margins, customer contract details, strategic plans, marking plans, resourcing plans, and customer and prospective customer information to unlawfully compete with Kelly.

### 2. Kelly Has Taken Reasonable Steps to Protect Its Trade Secrets.

Noretto's argument that there is no violation of the Michigan Uniform Trade Secret ("MUTSA") because every employee is aware of the "methods and systems" employed by Kelly, and other staffing companies use similar systems, must fail.  While all staffing companies may now use computer systems to store their information, the actual information contained on Kelly's system, however, is not known to individuals outside of Kelly.  Furthermore, Kelly has taken more than reasonable steps to protect the confidentiality of its trade secrets.  It requires employees to execute non-compete and non-disclosure agreements, such as the agreement at issue, at the commencement of their employment.  Kelly also limits access to confidential information and trade secrets according to the positions of the employees, provides information on a need-to-know basis, and uses passwords to access information.  (**Exhibit A**, Sheen Watkins

---

[1]    Noretto's reliance on *Kelly Services, Inc. v. Pinstripe, Inc.*, 2006 U.S. Dist. LEXIS 69556 (E.D. Mich. Sept. 27, 2006), attached as **Exhibit B**, is misplaced.  **His statement that the Court refused to issue a preliminary injunction based on the same non-compete language as in this case is absolutely false.**  The Court refused to grant injunctive relief based on the terms of a settlement agreement between the parties – the decision was not based on the language of the non-compete agreement.  Therefore, the *Pinstripe* case has no bearing on the outcome of this case.

Affidavit, ¶ 11.) These security measures have been found to be reasonable and sufficient under the Uniform Trade Secret Act. *See, e.g., Park-Ohio Indus., Inc. v. Carter,* 2007 U.S. Dist. LEXIS 9095, *39 (E.D. Mich. Feb. 8, 2007) (finding limited distribution of information and password security measures reasonable), attached as **Exhibit B**.

### 3. Noretto Has Failed to Return a USB Flash Drive Containing Kelly's Confidential Information and Trade Secrets.

Although Noretto admits that he has Kelly's trade secret information in his answer at Paragraph 15, Kelly recently discovered evidence of additional misappropriation. Approximately two weeks before his last day of employment, Noretto was provided with a USB flash drive that contained work proposals for Kelly's customers and prospective customers and other confidential information and trade secrets of Kelly. (**Exhibit A**, Watkins Affidavit, ¶ 16.) Noretto failed to return this USB flash drive to Kelly after he resigned his employment. (*Id.*, ¶ 17.) Counsel for Kelly has also requested the return of this flash drive, but it has not been returned. (**Exhibit C.**) Because Kelly will prevail on its claims of breach of contract and violation of MUTSA, this Court should preliminary enjoin Noretto from his unlawful conduct and require a return of all Kelly property, including, but not limited to, the USB flash drive.

### 4. The Reasons Behind Noretto's Decision to Voluntarily Resign Are Irrelevant.

The non-compete language expressly states that "[t]hese same limitations apply for one year after I leave Kelly . . . ." There is no express language indicating that the agreement does not apply if Kelly terminates Noretto, or if Noretto resigns with the belief that his termination is imminent. Therefore, the alleged reasons why Noretto resigned his employment are irrelevant.[2]

---

[2] For the sole purpose of clarifying the facts, Kelly states that it had no intention of forcing Noretto to resign. Norreto admitted that he voluntarily resigned his employment. (Noretto Affidavit, ¶ 5.) He tries to rely on the fact that he <u>believed</u> that he would be fired. This belief is

B.  **Kelly Is Suffering Irreparable Harm as a Result of Noretto's Unlawful Conduct.**

    1.  **Kelly Is Being Irreparably Harmed.**

Noretto's unlawful conduct and misappropriation of trade secrets will irreparably harm Kelly's customer goodwill, referral business, and competitive edge. Loss of customer goodwill has been held to constitute irreparable harm. *Superior Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994); *see also Lowry Computer Products, Inc. v. Head,* 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (stating that defendant's "knowledge is bound to have significant adverse impact on Lowry's business"). For this reason, the Sixth Circuit in *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992), stated: "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." (Citations omitted.) With the loss of goodwill and the resulting irreparable harm, Kelly's damages are not fully compensable with money damages.

    2.  **The Damages Provision in the Agreement Does Not Preclude Injunctive Relief.**

Noretto argues that because his Agreement provides that Kelly can recover money damages that Kelly cannot also obtain injunctive relief. This argument, however, is erroneous. Courts have awarded injunctive relief <u>and</u> damages and have not found that they are mutually exclusive. *See, e.g., Brillhart v. Danneffel,* 36 Mich. App. 359; 194 N.W.2d 63 (1971) (awarding damages <u>and</u> injunctive relief in a non-compete case involving the sale of a business). Courts

---

nonetheless untrue. Kelly placed Noretto on a performance improvement plan with action items, so that he could work on his leadership and communication skills. (**Exhibit A**, Affidavit of Sheen Watkins, ¶¶ 12, 13.) Kelly's expectation was that Noretto would improve his leadership and communication skills and remain employed at Kelly. (*Id.* ¶ 15.)

have further held that the presence of a liquidated damages clause did not bar injunctive relief. *See, e.g., Bradford v. The New York Times*, 501 F.2d 51, 56 n. 2 (2nd Cir. 1974). Therefore, injunctive relief is available to Kelly.

### C. The Harm to Kelly If a Preliminary Injunction Is Denied Outweighs the Harm to Noretto If It Is Granted.

By entering a preliminary injunction and enforcing Noretto's non-compete obligations, Defendant will not be prevented from earning a living. First, Noretto can work in the restricted market area in another industry. Second, Noretto has the ability to continue to work for Volt, but outside of the restricted counties in Oregon and Washington that comprised his market area. Therefore, this factor weighs heavily in Kelly's favor. *See Walling,* 851 F. Supp. at 849 ("Plaintiff's interests in protecting its business, confidential information, and trade secret protected information outweigh the harm caused Defendant by this injunctive relief.").

### CONCLUSION

For the foregoing reasons, and those set forth in its Motion for Preliminary Injunction and Brief in Support, Kelly requests that this Court grant the relief requested in its Verified Complaint.

    Respectfully submitted,

    BUTZEL LONG

    s/James J. Giszczak (P46917)
    s/Katherine D. Goudie (P62806)
    150 West Jefferson, Suite 100
    Detroit, Michigan 48226
    Phone: (313) 983-7475
    E-mail: giszczak@butzel.com
           goudie@butzel.com

Dated: June 25, 2007     Attorneys for Plaintiff
/931065/

      I hereby certify that on June 25, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Kirk M. Liebengood, 2710 W. Court St., Ste. 1, PO Box 1405, Flint, MI 48501.

                s/James J. Giszczak (P46917)
                s/Katherine D. Goudie (P62806)
                Butzel Long
                150 West Jefferson, Ste. 100
                Detroit, MI 48226-4450
                Phone:  313/983-7475
                E-mail: giszczak@butzel.com
                         goudie@butzel.com